# Schoch, Appellant, v. American International Corporation et al.

*Ejectment—Accretion to land—Rivers—Acts of April 3, 1792, 3 Sm. L. 70, and June 27, 1913, P. L. 665—Form of action—Land law—Title—Abstract—Limitation of action — Caveat — Board of property.*

1. Under the Act of April 3, 1792, 3 Sm. L. 70, the losing party in a caveat proceeding before the board of property may maintain an action of ejectment, such action being the "suit at common law" specified in the act.

2. The act was in reality a statute of limitations, fixing the period during which the title of the patentee could be contested, but it was necessary that plaintiff disclose title in himself, by his declaration and abstract.

3. In such action the plaintiff must recover on the strength of his own title.

4. In an action under the Act of 1792, the plaintiff is not entitled to have all the facts and the conclusions of the board of property reviewed de novo.

*Rivers—Filling of land—Title—Pleading—Plaintiff's statement—Act of June 27, 1913, P. L. 665.*

5. The Act of June 27, 1913, P. L. 665, contemplates a filling of land above low-water mark as well as below such point.

6. Where a patent has been issued under the Act of June 27, 1913, P. L. 665, for land reclaimed from the bed of a navigable river, and subsequently the board of property refuses a claim of one asserting that the land was unappropriated and vacant, and the losing party institutes a common law action in the nature of ejectment for the land, judgment for the defendant on the pleadings will be sustained where it appears that the plaintiff merely averred in his statement that he had made an application for a warrant and was refused, without further showing any title in himself.

Argued January 12, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 97, Jan. T., 1926, by plaintiff, from order of C. P. Delaware Co., June T., 1924, No. 559, directing judgment for defendants on the pleadings in case of S. H. Schoch v. American International Corporation and United States Shipping Board Emergency Fleet Corporation, defendants, and United States of America, intervening defendant. Affirmed.

Action under Act of April 3, 1792, 3 Sm. L. 70, for land in Tinicum Township.

Rule for judgment for defendants on the pleadings. Before BROOMALL, J.

The opinion of the Supreme Court states the facts.

Judgment for defendants. Plaintiff appealed.

*Error assigned* was, inter alia, judgment, quoting it.

*Albert J. Williams,* for appellant.—The Act of June 27, 1913, P. L. 665, contemplated the patenting of lands below low-water mark, which the United States should from time to time abandon for navigation under an agreement with the owners of lands to be taken for

widening, straightening or improving of the main channel.

The act was not necessary for the patenting of land which had ceased to be a part of the bed of the river and was not only above low-water mark but high-water mark too, at the time of its passage. Such lands were subject to be patented by the State as vacant land, and no ceding of authority over them by Congress was necessary. The Act of 1792 intended to afford the one against whom the board decides, a remedy in the nature of an appeal. The appeal is to take the form of an action at common law,—that is to say, a summons shall issue, etc., instead of filing an appeal, as is done on an appeal from a jury of view, etc. The act leaves it to the one against whom the decision is rendered to determine the particular character of the action he shall bring and that is to be determined according to the nature of his rights. If he has a title by warrant, survey, settlement, etc., he may bring and sustain ejectment. But if he has not such a title, then it is fatal to bring ejectment. We have not such a title, and hence the effort of the defendant to have our action characterized as ejectment.

*Paul W. Knox,* with him *George W. Coles,* United States Attorney, *Stanley B. Rice* and *Maurice W. Sloan,* for appellee.—In order to recover in this action, plaintiff must, by his statement, show that he has title: Shoenburger v. Becht, 5 Watts 194; French v. Seely, 6 Watts 292; Zeller v. American International Corp., 271 Pa. 472.

It is obvious from the language of the statute that the action contemplated is a common law action and not a new form of action created by the statute and this court has repeatedly held that the proper action under it is a common law action of ejectment: Stockman v. Blair, 5 Binney 211; French v. Seely, 6 Watts 292; Wilson v. Altemus, 2 W. & S. 255; Shoenberger v. Baker, 22 Pa.

398; Burford v. McCue, 53 Pa. 427; Zeller v. American International Corp., 271 Pa. 472.

Plaintiff's statement shows no title in him and judgment was properly entered for defendants on the pleadings.

This court has no jurisdiction because the United States owns and has possession of the land in question: Stanley v. Schwalby, 147 U. S. 508; Minnesota v. Hitchcock, 185 U. S. 373.

OPINION BY MR. JUSTICE SADLER, April 12, 1926:

The tract of land which is the subject of the present controversy contains 54.91 acres, and adjoins what is known as Hog Island, located in the Delaware River, and on it were built the shipyards operated by the United States Shipping Board Emergency Fleet Corporation. The property, then owned by Bohlen and Black, was sold by them in 1917, with the acreage now in question, to the American International Corporation. A question arose as to whether a good title could be conveyed to the portion situated below the ordinary low-water mark. The vendors contended that, as they were abutting owners, and the land had been filled in by the pumping of dirt from the river, they became the owners in fee thereof. In 1885, all of the property now in question was under the navigable stream. Beginning at that time and continuing for ten years, the adjacent bottom land in front of the island, both above and below low-water mark, was used, with their knowledge and consent, as a dumping ground for matter dredged from the Delaware and Schuylkill Rivers, and other points, under the direction of officials of the United States Government, and a dyke along the entire frontage was constructed. Onto the space behind this, in 1906, the United States Government placed material, and, in 1912, a cross-bank was built, so that the refuse could be deposited without danger of its flowing back into the water at any point. Since the construction of these walls the

newly made area has become fast land by further storing of dredged substances. The result of this operation, together with the alluvion brought down by the river, and the action of the water, was that 54.91 acres became attached to Hog Island, and there also was formed, a short distance therefrom, a small tract of about fourteen acres, at a plane of four feet above the common low-water mark, connected with the main island by the dykes and filling already referred to.

After the sale to the American International Corporation, an action was brought to recover the purchase price of the portion previously beyond the low-water mark, and which had become a part of the abutting land, in the manner above noted. This court decided that, if the Commonwealth contested plaintiff's title to this land, it might be held to be in the State, and hence that the owners were unable to convey a good and marketable title to it: Black v. American International Corporation, 264 Pa. 260. In 1909, one Zeller, regarding the fourteen acres, which had been built up above the level of the river, as an island, and himself as the discoverer thereof, made application to the Land Office of Pennsylvania for a patent to the same, as provided by the Act of January 27, 1806 (4 Smith Laws 268). The Secretary of Internal Affairs found the land to be as described, and directed, as a preliminary to the patent, the granting of a warrant of survey. The latter, however, was never issued, and, after the purchase by the American International Corporation of Hog Island and the adjoining bottom land, as above set forth, it applied to the Commonwealth for the granting of title to it, as property reclaimed from the bed of a navigable stream, under the terms of the legislation then in force (Act June 27, 1913, P. L. 665), and which provides that the owner of abutting land may, in preference to all others, secure a patent for state lands which underlie water abandoned for navigable use, and which may be reclaimed by fillings.

We thus find two applicants for the same area; one for the so-called island, and the other for all the filled-in land. Each party filed a caveat against the claim of the other, and the opposing applications were heard by the board of property. That body decided that the land in question was not, and never had been, an island; that, in consequence, the first application should be refused, and it was directed that a warrant be issued to the owner of the abutting land. Later, an appraisement was had, the purchase money paid, and a patent issued to it. Zeller claimed, as does the present plaintiff, that the Act of 1913 did not apply. Three proceedings were then instituted by him, two being actions of ejectment, one against the American International Corporation, and the second against the same party and the United States Shipping Board Emergency Fleet Corporation, to whom the rights of the former had been assigned. A third proceeding was instituted as a so-called "action at common law," and this was removed to the federal courts.

The two actions in ejectment finally reached this court, judgments having been entered below for the defendants on account of the insufficiency of the plaintiff's declarations. No sustainable claim of title had been set up on his behalf, and, of course, the well-known rule that a claimant in ejectment must depend upon the strength of his own title, and not upon the weakness of that of his opponent, applied: Artz v. Meister, 278 Pa. 583. Upon appeal, the order entered was affirmed, and the legal propositions involved are so thoroughly considered by Justice KEPHART in the opinion filed, that repetition of the principles there discussed, applicable likewise to the present proceeding, is unnecessary: Zeller v. American International Corporation, 271 Pa. 472.

The third of the Zeller actions, based upon the so-called "suit at common law," came to a hearing before the federal court, and the question was there raised as to the meaning of the Act of April 3, 1792 (3 Smith Laws 70), which provided that "when any caveat is de-

termined by the board of property," a patent shall be withheld for six months, "within which time the party against whom the determination of the board is may enter his suit at common law, but not afterwards, and the party in whose favor the determination of the board is shall be deemed and taken to be in possession" for the purpose of trial (however the actual possession may be) but such "supposed possession shall nevertheless have no effect upon the title." If no suit is brought, it is directed that the patent shall issue to the applicant; but if suit is instituted it shall be granted to the successful party, and, in either event, the title secured will be sustained. It was contended that this legislation had for its purpose the grant of a review of the facts and conclusions drawn therefrom by the board of property, and was, in effect, an appeal from its decision, similar to that taken from a board of viewers appointed to assess damages for the taking of land, and should, therefore, be tried as in the case of a feigned issue, and all matters considered de novo. The District Court of the United States took this view: Zeller v. American International Corp., 274 Fed. 815. On appeal to the Circuit Court of Appeals, a decision on this controverted point became immaterial, since, on the merits of the case, the verdict below was for the defendant. The construction of the Pennsylvania legislation, made by the trial court, was called to the attention of the appellate tribunal, but it held that, in view of the verdict, it was unnecessary to definitely determine the question. It did say, however, that "the question of interpretation of the Pennsylvania Act of April 3, 1792, is one primarily for the courts of Pennsylvania. A federal court will not interpret a state statute unless, in the trial of a cause, it is compelled to do so": Zeller v. American International Corp., 292 Fed. 822.

There can be no question of the Pennsylvania rule controlling such proceedings. From the earliest of our decisions to the latest in 271 Pa. (Zeller v. American

International Corp., supra), it has uniformly been held that ejectment is the proper action in such case: Com. v. Cochran, 1 Binn. 323; Shoenburger v. Becht, 5 Watts 194; Wilson v. Altemus, 2 W. & S. 255; Zeller v. American International Corp., supra. The Act of 1792 provided for a common law action, but permitted the suit to be sustained, though the one against whom the decision had been made by the board of property was still in possession. It was in reality a statute of limitations, fixing the period during which the title of the patentee could be contested, but it was necessary that the plaintiff disclose title in himself, by his declaration and abstract. In Burford v. McCue, 53 Pa. 427, 432, it was said, in part: "The plaintiff was entitled only to recover on the strength of his own title, and not upon the weakness of that of his adversary. The latter having the peaceable possession, and claiming under a settlement, warrant and survey, all prior in time to the inception of plaintiff's title, he could only be put out of possession by force of title. This made it necessary for the plaintiff to establish title in himself. This he tried to do before the board of property and failed; and it was incumbent on him to do it before the court and jury, or fail to get the patent. But if, on the trial, it appears that the title is not in him, but in some third person, his discomfiture in the attempt to recover possession by force of title would be as complete as if it had been in the defendant's own hands......

"The Act of 3d of April, 1792, regulates proceedings on caveats before the board of property, [also] the effect of a decision by the board, and the time within which the losing party must institute ejectment before being barred by its decision. That period is six months; and his opponent, the winning party before the board, is to be considered in the actual possession of the land. The ejectment is in the usual form, and to be maintained in the usual way where title is in issue; consequently the plaintiff must recover on the strength of his own title.

As the Commonwealth's grant of title is to follow the result of the trial at law, it would seem to be of the first consequence that the plaintiff should establish title in himself. The effect of an outstanding title should certainly be no less potent in an ejectment following a decision of the board of property, than it is in any other trial of title in ejectment. The defendant was not bound to show his hand at all, until the plaintiff made out at least a prima facie case."

It becomes necessary to apply the principles already set forth to the facts of the present proceeding. The petition of the American International Corporation, made on June 11, 1919, was for a warrant of survey of the 54.91 acres, and a patent issued for the same, covering the land reclaimed from the bed of a navigable river, under the authority of the Act of June 27, 1913, P. L. 665, providing, in part, for the widening of rivers, under an agreement with the owners of land which may be affected, and conferring upon the Commonwealth the right to issue a patent therefor "when the government shall permit the abandonment and filling up of other parts of such river or stream which may thereby be no longer useful for the ordinary purposes of navigation." The act contemplates a filling of land above low-water mark as well as below such point. It appears the Government of the United States had abandoned its right to navigation over the land in dispute, and it had been filled in, in the manner already stated.

On December 27, 1923, Schoch, the present plaintiff, filed an application with the Secretary of Internal Affairs for a warrant to survey the land in dispute, alleged to be unappropriated and vacant, and for which warrant had been asked by the American International Corporation four and one-half years before,—the rights of the latter having been assigned later to the United States Shipping Board Emergency Fleet Corporation. The board of property denied the claim of the plaintiff as set forth in the caveat filed, and refused his applica-

tion, and this suit was thereupon brought "at common law," which proceeding was, under our authorities, in reality, one of ejectment against the party to whom the patent had been granted, and who had paid the purchase money to the Commonwealth. The United States of America, averring that it was now the owner of the land in controversy, intervened, and is also a party defendant.

The defendants filed an answer to the statement of plaintiff, denying that he had shown any title in himself, or any right to have a warrant to survey the land, and a rule was granted on the plaintiff to show cause why judgment on the pleadings should not be entered in their favor, as permitted by section 2 of the Ejectment Act of May 8, 1901, amended by the Act of June 7, 1915, P. L. 887 (reënacted, with additions, June 12, 1919, P. L. 478) : Glenn v. Stewart, 265 Pa. 208; Shaw v. Cornman, 271 Pa. 260; Gailey v. Wilkinsburg Co., 283 Pa. 381. From the judgment directed in favor of the defendants, this appeal was taken, and again it is urged that plaintiff was not bound to show title in himself, but could, in this proceeding, under the Act of 1792, have all of the facts and the conclusions of the board of property reviewed de novo. As we have already observed, this is not the law as uniformly held by our decisions, and we see no reason to depart therefrom.

It is further suggested by defendants that the land in question is now owned by the United States of America, the intervenor, and that, therefore, the action of ejectment cannot be maintained against it as the sovereign, the court having no jurisdiction, consent of Congress to bring suit not having been granted: State of Minnesota v. Hitchcock, 185 U. S. 373. A discussion of this question is immaterial, however, in the present case, since the judgment of the court below must be upheld on the grounds heretofore set forth.

The judgment is affirmed.